UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNN EPPERSON,

    Petitioner,

v.

    Case No. 2:15-cv-10097

    HONORABLE STEPHEN J. MURPHY, III

S.L. BURT,

    Respondent.

_____/

**ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS (document no. 1), DENYING A CERTIFICATE OF
APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Michigan prisoner Dwaynn Epperson filed a habeas corpus petition pursuant to 28 U.S.C. § 2254. He was convicted of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, and felonious assault, Mich. Comp. Laws § 750.82, following a jury trial in the Wayne County Circuit Court. He was sentenced to concurrent terms of 6 to 25 years imprisonment and 6 to 15 years imprisonment on those convictions in 2012. In his *pro se* pleadings, Epperson raises claims concerning the sufficiency of the evidence, the charging decision of the prosecutor, and double jeopardy. For the reasons below, the Court will deny the petition, deny a certificate of appealability and deny leave to proceed *in forma pauperis* on appeal.

**BACKGROUND**

Epperson's convictions arose from an altercation with Jeremiah Fish in Detroit, Michigan on January 16, 2012. The Court adopts the statement of facts set forth by defense counsel on direct appeal to the extent that it is consistent with the record:

Jeremiah Fish is the complaining witness in this case. At the time of the offense, he was 17 years of age. (TT 5/1/2012 p 91). On January 16, 2012, he went to visit his friend, Vanessa Wheatley, at her house, located at 4810 Cabot Street in the City of Detroit. (TT 5/1/2012 p 92). Mr. Fish testified that he arrived about noon and went into Ms. Wheatley's bedroom where they watched TV and smoked marijuana. He has known Ms. Wheatley for approximately 3 years. (TT 5/1/2012 p 94). After approximately 2 hours, Mr. Epperson walked into Vanessa's room and told Mr. Fish that he had to leave because it was getting late. (TT 5/1/2012 p 97). It should be pointed out at this point that Mr. Fish's testimony about arriving at noon was inconsistent with the testimony of Vanessa Wheatley, who indicated he arrived at approximately 10:00 p.m. and departed around midnight. (TT 5/1/2012 p 160).

Mr. Fish continued his testimony by indicating he was shocked that Mr. Epperson was asking him to leave because this was not Mr. Epperson's house. Mr. Epperson left the room, but returned to ask Mr. Fish to leave once again. Mr. Fish responded "I'm not your kid and not going to listen to you". Mr. Epperson started yelling and told him to get out of the room. Eventually, Mr. Epperson put his hands on Mr. Fish to grab him by the collar with both hands. (TT 5/1/2012 p 101). A fight ensued. Mr. Fish indicated that he hit him and knocked him down falling into the closet. (TT 5/1/2012 p 102). As Mr. Epperson was trying to get up, Mr. Fish struck him again. (TT 5/1/2012 p 103). At this point, Mr. Fish began to leave the house with Mr. Epperson following. (TT 5/1/2012 p 104). Mr. Fish was standing in front of the house when Mr. Epperson came at him, striking him with something in his right hand. Mr. Fish did not see a weapon and prior to being struck he heard Vanessa Wheatley say "Jeremiah watch out." (TT 5/1/2012 p 105). Although Mr. Fish did not feel as though he had been stabbed, he saw blood on his abdomen. He soon discovered he was stabbed in the lower abdomen. (TT 5/1/2012 p 107). Mr. Fish testified that Mr. Epperson tried to come at him again 3 or 4 times. (TT 5/1/2012 p 108). Eventually Mr. Epperson and Vanessa Wheatley walked down the street, borrowed a telephone and called the police. Ultimately, Mr. Fish was transported to the hospital by EMS where he underwent surgery and stayed for several days. (TT 5/1/2012 p 114).

Vanessa Wheatley was the next witness to testify. (TT 5/1/2012 p 159). Ms. Wheatley testified that on January 16, 2012, Jeremiah Fish came over to her home at approximately 9 or 10:00 at night. They sat in her bedroom watching TV. (TT 5/1/2012 p 160). She testified that Dwaynn Epperson is her step-father, he is her sister Melissa's (age 7) father and they share the same mother. (TT 5/1/2012 p 163). It was approximately 11 or 12:00 at night when Mr. Epperson asked Mr. Fish to leave. (TT 5/1/2012 p 164). Ms. Wheatley stated that Mr. Epperson came in and said "Jeremiah are you going to leave, it's getting late." Jeremiah Fish said "No, I'm not leaving, it's not your house." (TT 5/1/2012 p 165). Mr. Epperson pushed Jeremiah and they started fighting.

2

Ms. Wheatley stated she only saw about 10 seconds of the fight because she went to ask her mother if Jeremiah could stay. Eventually, Mr. Fish left the house and she followed him. (TT 5/1/2012 p 168). She never saw Mr. Epperson run from the house with a weapon. Also, she never heard Mr. Epperson say anything to Mr. Fish once they were outside the house. Ms. Wheatley stated she did not notice any injury to Jeremiah Fish until they had walked up to Michigan Avenue. Mr. Fish showed her a wound the size of a quarter. At that point, she saw her uncle on the street and asked if they could use his telephone. (TT 5/1/2012 p 170). She never saw Mr. Epperson with a weapon. (TT 5/1/2012 p 171). She admitted that she and Mr. Fish had been smoking marijuana in her bedroom before this happened. (TT 5/1/2012 p 172). She further testified that she didn't see any altercation outside between Mr. Fish and Mr. Epperson because she wasn't paying attention.

On cross-examination Ms. Wheatley testified that upon his arrival, Mr. Fish looked high. (TT 5/1/2012 p 175). They both smoked marijuana. She stated that during the portion of the fight she witnessed between Mr. Fish and Mr. Epperson, Mr. Fish was basically throwing all of the punches. (TT 5/1/2012 p 178). Ms. Wheatley testified that located in her room was a TV stand with sharp edges, a big screen TV with sharp edges and a heater with sharp edges. (TT 5/1/2012 p 179). Ms. Wheatley testified she never saw a weapon in Mr. Epperson's hand and never saw him threaten Mr. Fish with a weapon. (TT 5/1/2012 p 180).

Police Officer Donald Hyatt testified that on January 16, 2012, he was working patrol in a marked scout car. He was the officer who responded to the call regarding Jeremiah Fish. Upon his arrival, he saw the victim and a white female. He observed a puncture wound mark about 2 inches on Mr. Fish's abdomen. (TT 5/1/2012 p 190). There was also some blood on his stomach. Officer Hyatt described Mr. Fish's demeanor as "calm, upset." (TT 5/1/2012 p 192). After speaking with Mr. Fish, the officer went to 4810 Cabot and observed the suspect peeking through the window. (TT 5/1/2012 p 193). A white female came to the door and the officer asked for Mr. Epperson. Mr. Epperson came outside and was arrested. (TT 5/1/2012 p 194). A pat down of Mr. Epperson produced a State of Michigan Identification card with the address of 4810 Cabot. (TT 5/1/2012 p 196). On cross-examination, the officer testified that no knife or other weapon was found. (TT 5/1/2012 p 199).

Police Officer Mark Williams testified that he interviewed Mr. Epperson after his arrest. (TT 5/1/2012 p 205). He testified to providing Mr. Epperson with his constitutional rights and Mr. Epperson agreed to make a statement. Mr. Epperson denied stabbing anyone and could not remember having a knife or stabbing Mr. Fish.

The next witness to testify was Dr. James Tibursky, M.D. Dr. Tibursky treated

> Mr. Fish at Detroit Receiving Hospital. (TT 5/2/2012 p 5). Dr. Tibursky testified that there was a very small wound to the outside, less than an inch long, it penetrated the skin and muscle and there was little bleeding. The wound was approximately 5 or 6 inches deep. (TT 5/2/2012 p 9). Dr. Tibursky did exploratory surgery and repaired a hole in Mr. Fish's colon.
>
> On cross-examination, Dr. Tibursky testified that it is possible that the wound could have been made by another sharp object besides a knife. The object would have had to be narrow and long. (TT 5/2/2012 p 13).
>
> Following the testimony of Dr. Tibursky, the people moved to amend the criminal information to include "a metal cutting instrument." There was no objection by the defense. (TT 5/2/2012 p 28).

Def. App. Brf. 5–8, ECF No. 9-9.

At the close of trial, the jury convicted Epperson of assault with intent to do great bodily harm less than murder, and felonious assault. The trial court subsequently sentenced him to concurrent terms of 6 to 25 years imprisonment and 6 to 15 years imprisonment.

Following sentencing, Epperson filed an appeal of right with the Michigan Court of Appeals raising the same claims presented on habeas review. The Michigan Court of Appeals denied relief on those claims and affirmed Epperson's convictions. *People v. Epperson*, No. 311933, 2014 WL 265520 (Mich. Ct. App. Jan. 23, 2014) (unpublished). Epperson then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Epperson*, 495 Mich. 1008 (2014).

Epperson filed a federal habeas petition in 2015. Pet., ECF No. 1. He raises claims concerning the sufficiency of the evidence, the charging decision of the prosecutor, and double jeopardy. *Id.* Respondent contends that the petition should be denied because the double jeopardy claim is barred by procedural default and all of the claims lack merit. Resp., ECF No. 8.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, provides the standard of review for federal habeas cases brought by state prisoners. The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. But "for a federal court to find a state court's application of

[Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7 and *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103*; see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton* 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71–72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam); *see also Lopez v. Smith*, 135 S. Ct. 1, 2 (2014) (per curiam). The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007); *Dickens v. Jones*, 203 F.

Supp. 2d 354, 359 (E.D. Mich. 2002).

Finally, a state court's factual determinations are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## DISCUSSION

I.   Procedural Default

As an initial matter, Respondent contends that one of Epperson's claims is barred by procedural default. It is well-settled, however, that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Here, the substantive issues are easier to resolve such that the interests of judicial economy are best served by addressing the merits of the habeas claims.

II.   Merits

  A.   Sufficiency of the Evidence

Epperson first asserts that he is entitled to habeas relief because the prosecution

failed to present sufficient evidence to support his felonious assault conviction, particularly that he possessed a dangerous weapon.

The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence must survive "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review — as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the responsibility of the jury — not the court — to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's

claim." *Id.* at 788–89.

Under Michigan law, the elements of felonious assault are: (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *People v. Avant*, 235 Mich. App. 499, 505 (1999); Mich. Comp. Laws § 750.82. Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense.

Applying the foregoing standards, the Michigan Court of Appeals ruled that the prosecution presented sufficient evidence to support Epperson's conviction for felonious assault. The court explained in relevant part:

> Viewed in a light most favorable to the prosecution, the evidence was sufficient to permit the jury to reasonably infer that defendant possessed a dangerous weapon, i.e., a knife or a sharp cutting-type instrument, when he assaulted Jeremiah Fish. Fish testified that he walked out of the house after arguing and fighting with defendant. He then heard Vanessa Wheatley yell, "[W]atch out." Fish immediately turned around and saw defendant quickly approaching him. According to Fish, defendant thrust his right hand toward Fish's abdomen, stabbing him. Fish testified that he felt a "piercing." He looked down at his abdomen and saw blood. Fish did not see a knife or other weapon in defendant's hands because defendant's hands were covered by his coat sleeves. In addition, Fish asserted that he first saw blood on himself after defendant thrust his right hand toward his abdomen. After the assault, Fish was taken to Detroit Receiving Hospital and examined by Dr. James Tibursky. Tibursky observed a small, smooth, five to six inch deep wound consistent with a sharp object going in. Based on Tibursky's observations and experience, he concluded that Fish's wound was caused by a long, narrow, "cutting-type instrument" with sharp edges, "consistent with a knife." A reasonable inference the jury could draw from the evidence is that defendant possessed a dangerous weapon when he assaulted Fish. A jury could reasonably infer that defendant concealed a knife or sharp cutting instrument under his coat sleeves and stabbed Fish. This inference is consistent with Fish's testimony regarding his observations and defendant's hand movements. It is also consistent with Tibursky's testimony, i.e., that Fish's wound was caused by a long, narrow, cutting-type instrument with sharp edges, similar to a knife. Accordingly, the evidence, when viewed in the light most favorable to the prosecution, is sufficient to establish that defendant possessed a dangerous weapon when he assaulted Fish.

*Epperson*, 2014 WL 265520 at *1.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The testimony of the victim, Jeremiah Fish, and the medical evidence, considered in a light favorable to the prosecution, established that Epperson stabbed Fish in the abdomen with a knife or knife-like object during an argument, and that Epperson required surgery to correct the damage. A victim's testimony alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658–59 (6th Cir. 2008) (citing cases). The victim's testimony and the medical evidence, along with reasonable inferences therefrom, was sufficient to support a finding that Epperson was armed with a dangerous weapon and that he used it to commit the crime.

Epperson challenges the credibility of the victim and the inferences the jury drew from the testimony presented at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The evidence presented at trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Epperson committed felonious assault. Habeas relief is not warranted on this claim.

    B.    Charging Decision of the Prosecutor

Epperson also asserts that he is entitled to habeas relief because the prosecutor abused her discretion by charging him with assault with intent to do great bodily harm less than murder, as well as felonious assault, arising from a single incident.

It is well-settled that a prosecutor has significant discretion in determining what charge to file against an accused provided that probable cause exists to believe that an offense was committed by the accused under the charging statute. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *United States v. Davis*, 15 F.3d 526, 529 (6th Cir. 1994). A prosecutor, however, may not undertake a prosecution based upon a vindictive motive, *Bordenkircher*, 434 U.S. at 363, or based upon race, religion, or some other arbitrary classification. *See Oyler v. Boles*, 368 US. 448, 456 (1962).

In this case, the Michigan Court of Appeals denied relief on this claim concluding that the prosecutor did not abuse her discretion in charging Epperson with two different assault crimes arising from the same incident because both of the charges were supported by the evidence and did not violate double jeopardy principles. *Epperson*, 2014 WL 265520 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecutor had probable cause to believe that Epperson was guilty of assault with intent to commit great bodily harm less than murder and felonious assault based upon the victim's description of the incident and the medical testimony documenting the type and severity of his injury. Moreover, there is no evidence that the prosecutor's charging decision was vindictive or based upon any impermissible factor. Epperson fails to establish that the prosecutor abused her discretion or otherwise violated his constitutional rights. Habeas relief is not warranted on this claim.

C.   Double Jeopardy

Lastly, Epperson asserts that he is entitled to habeas relief because his convictions and sentences for assault with intent to commit great bodily harm less than murder and felonious assault violate double jeopardy principles.

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Double Jeopardy Clause provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (quotations omitted). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Id.*

In the context of multiple punishments, however, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses. As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . . the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). Thus, "even if the two statutes proscribe the same conduct, the Double Jeopardy Clause does not prevent the imposition of cumulative punishments if the state legislature clearly intends to impose them." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986). When "a legislature specifically authorizes cumulative punishments under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury

may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368–69 (1983). In determining whether a state legislature intended to authorize separate, cumulative punishments under the circumstances presented, a federal court must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments. *Id.* at 368; *Banner v. Davis*, 886 F.2d 777, 779–80 (6th Cir. 1989).

The Michigan Court of Appeals denied relief on this claim finding that there was no double jeopardy violation because the two crimes have different elements and the Michigan Supreme Court has determined that convictions for both assault with intent to do great bodily harm less than murder and felonious assault do not violate constitutional double jeopardy protections. *Epperson*, 2014 WL 265520 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The Michigan courts have ruled that the state legislature has authorized separate punishments for assault with intent to commit great bodily harm less than murder and felonious assault and that those offenses each contain an element that the other does not such that convictions for both offenses arising from the same incident do not violate double jeopardy. *See, e.g, People v. Strickland*, 293 Mich. App. 393, 401–02 (2011). This Court is bound by that determination. Thus, Epperson fails to establish a double jeopardy violation; habeas relief is not warranted on this claim.

## CONCLUSION

For the reasons stated, the Court concludes that Epperson is not entitled to federal habeas relief on his claims and that his habeas petition must be denied.

Before Epperson may appeal the Court's decision, a certificate of appealability must

issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A federal district court must issue or deny a certificate of appealability when denying relief. Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). A petitioner satisfies this standard by demonstrating "that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Having conducted the requisite review, the Court concludes that Epperson fails to make a substantial showing of the denial of a constitutional right as to his habeas claims. A certificate of appealability is not warranted. The Court also will deny Epperson leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Petitioner's Writ of Habeas Corpus (document no. 1) is **DENIED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** leave to proceed in forma pauperis.

**SO ORDERED.**

s/Stephen J. Murphy, III<br>STEPHEN J. MURPHY, III<br>United States District Judge

Dated: October 28, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 28, 2016, by electronic and/or ordinary mail.

s/David P. Parker<br>Case Manager